01

02

03

04

05

06                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
07                            AT SEATTLE

08  SHARON STALEY,                    )
                                      )   CASE NO. C09-1424-JLR
09        Plaintiff,                  )
                                      )
10  v.                                )   REPORT AND RECOMMENDATION
                                      )   RE: SOCIAL SECURITY DISABILITY
11  MICHAEL J. ASTRUE, Commissioner   )   APPEAL
    of Social Security,               )
12                                    )
          Defendant.                  )
13  _____  )

14          Plaintiff Sharon Staley proceeds through counsel in her appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16  denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental

17  Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having

18  considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

19  the Court recommends that this matter be REMANDED for further administrative proceedings.

20  / / /

21  / / /

22  / / /

01 **FACTS AND PROCEDURAL HISTORY**

02 Plaintiff was born on XXXX, 1974.[1]  She completed high school, attending special

03 education classes.  (AR 270.)  Plaintiff previously worked as a cashier, retail clerk, and

04 companion.  (AR 51, 263.)

05 Plaintiff filed applications for DIB and SSI in August 2002.  (AR 145, 357, 360.)  On

06 February 9, 2005, an ALJ issued a decision finding plaintiff able to perform her past relevant

07 work as a home companion and, therefore, not disabled.  (AR 135-45.)  On May 24, 2006, this

08 Court affirmed the ALJ's decision.

09 Plaintiff filed new applications for DIB and SSI in June 2006.  (AR 231-32, 258.)  She

10 alleged disability beginning September 1, 2002 due to fibromyalgia, deformed feet, bilateral

11 hearing loss, deformed disc in lower back, depression, bipolar disorder, cysts in ovaries, high

12 cholesterol, and gastro esophageal reflux disease (GERD).  (AR 258, 262.)  Her applications

13 were denied at the initial level and on reconsideration, and she timely requested a hearing.

14 On May 20, 2009, ALJ Wayne Araki held a hearing, taking testimony from plaintiff and

15 vocational expert William Weis.  (AR 87-130.)  On June 17, 2009, the ALJ issued a decision

16 finding plaintiff not disabled.  (AR 39-53.)  He found that the only period at issue began on

17 February 10, 2005, the day after the previous decision, and that the presumption of continuing

18 non-disability had been rebutted based on the evidence of new severe impairments since the

19 prior decision.  (AR 40.)  The ALJ also found that plaintiff met the insured status

20

21 _____

 1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal
Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to

22 Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial
Conference of the United States.

01 requirements of the Social Security Act through September 30, 2007.   (AR 41.)

02     Plaintiff timely appealed.   The Appeals Council, on August 19, 2009, denied plaintiff's

03 request for review (AR 4-6), making the ALJ's decision the final decision of the Commissioner.

04 Plaintiff appealed this final decision of the Commissioner to this Court.

05                                   **JURISDICTION**

06     The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

07                                   **DISCUSSION**

08     The Commissioner follows a five-step sequential evaluation process for determining

09 whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

10 must be determined whether the claimant is gainfully employed.   The ALJ found that plaintiff

11 had not engaged in substantial gainful activity (SGA) since February 9, 2005, the date of the

12 prior decision.   He concluded that plaintiff's part-time work at a teriyaki shop in 2008 did not

13 rise to the level of SGA, but was relevant to the determination of residual functional capacity

14 (RFC).

15     At step two, it must be determined whether a claimant suffers from a severe impairment.

16 The ALJ found plaintiff's back disorder, arthritis in the shoulders, elbows, and hands, deformed

17 feet, bilateral hearing loss, and schizoaffective disorder severe.   He found a number of other

18 impairments, including asthma, hand tremor, GERD, ovary cysts, high cholesterol, learning

19 disability, and bipolar disorder not severe.

20     Step three asks whether a claimant's impairments meet or equal a listed impairment.

21 The ALJ concluded plaintiff did not have an impairment or combination of impairments that

22 met or medically equaled a listing.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01    If a claimant's impairments do not meet or equal a listing, the Commissioner must

02  assess RFC and determine at step four whether the claimant has demonstrated an inability to

03  perform past relevant work.   The ALJ found plaintiff able to lift or carry twenty pounds

04  occasionally and ten pounds frequently, stand or walk for one hour intervals for up to six to

05  eight hours in an eight-hour workday, and sit for two hour intervals for up to eight hours in an

06  eight-hour workday.   He further found plaintiff able to use the upper extremities for frequent

07  reaching, handling, and fingering, to occasionally stoop, crouch, kneel, climb stairs and ramps,

08  and to balance.   The ALJ found that plaintiff should avoid climbing ladders or perform a job

09  that requires hearing in an environment with loud ambient noise, but that she retained the

10  mental functional capacity to remember, understand, and carry out simple and detailed, but not

11  complex, tasks and instructions.   With this RFC, the ALJ found plaintiff able to perform past

12  relevant work as a retail sales clerk and companion.

13    If a claimant demonstrates an inability to perform past relevant work, the burden shifts

14  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

15  an adjustment to work that exists in significant levels in the national economy.   With the

16  assistance of the vocational expert, the ALJ alternatively found plaintiff able to perform other

17  jobs, such as work as an assembler, basket filler, semiconductor bonder, and table worker.

18    This Court's review of the ALJ's decision is limited to whether the decision is in

19  accordance with the law and the findings supported by substantial evidence in the record as a

20  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

21  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

22  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01    F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

02    supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

03    F.3d 947, 954 (9th Cir. 2002)

04          Plaintiff argues that the ALJ improperly evaluated her hand tremor, understated her

05    cognitive problems, inadequately assessed her credibility, improperly rejected lay testimony,

06    and erred at steps four and five.   She requests remand for further administrative proceedings.

07    The Commissioner argues that the ALJ's decision is supported by substantial evidence and

08    should be affirmed.   For the reasons described below, the Court finds that this matter should be

09    remanded for further administrative proceedings.

10                                        <u>Step Two</u>

11          At step two, a claimant must make a threshold showing that her medically determinable

12    impairments significantly limit her ability to perform basic work activities.   *See Bowen v.*

13    *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

14    activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

15    404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

16    severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

17    effect on an individual's ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

18    1996) (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a *de minimis*

19    screening device to dispose of groundless claims."   *Id*. (citing *Bowen*, 482 U.S. at 153-54).

20    An ALJ is also required to consider the "combined effect" of an individual's impairments in

21    considering severity.   *Id*.

22    / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01    A.    Hand Tremor

02    Plaintiff takes issue with the ALJ's step two decision as related to her hand
tremor:

03

04    In September 2006, the claimant reported having hand tremors for the past year.
She complained of difficulty writing and doing things such as peeling shrimp or
cutting her fingernails.  On examination, Alison Schulman, M.D., noted that

05    the claimant had a minor bilateral hand tremor when her arms were outstretched.
At other times, Dr. Schulman observed no evidence of tremors.   Dr. Schulman

06    opined that the claimant's hand tremor was not significantly limiting.   Based on
Dr. Schulman's examination findings, I conclude that the claimant's bilateral

07    hand tremor is non-severe.

08    (AR 42; internal citation to AR 845-86 omitted.)

09    Plaintiff points to a November 29, 2005 note from her treating physician, Dr. Doris

10    Page, in which she complained about the worsening bilateral tremor and Dr. Page noted

11    "[d]ifficulty with alternating hand movements."   (AR 810.)   Plaintiff observes that the

12    remainder of the report is missing from the administrative record and argues that this warrants

13    remand pursuant to sentence four or six of 42 U.S.G. § 405(g) (sentence four: "The court shall

14    have power to enter, upon the pleadings and transcript of the record, a judgment affirming,

15    modifying, or reversing the decision of the Commissioner of Social Security, with or without

16    remanding the cause for a rehearing."; sentence six of: "The court   . . . may at any time order

17    additional evidence to be taken before the Commissioner . . . , but only upon a showing that

18    there is new evidence which is material and that there is good cause for the failure to

19    incorporate such evidence into the record in a prior proceeding[.]")   She also points to a

20    February 23, 2006 note from treating nurse practitioner Tina Christian, who observed a "fine

21    tremor . . . in the hands bilaterally."   (AR 808.)

22    Plaintiff argues that the ALJ applied the wrong legal standard in relying on Dr.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  Schulman's opinion that the tremor did "not appear to be significantly limiting." (AR 42, 845.)

02  She asserts that her hand tremor met the very low threshold of having more than a minimal

03  effect on her ability to perform based work activities because it restricted her ability to use her

04  hands for fine manipulation.   She argues that, even if it did not meet this standard, the ALJ was

05  still required to include associated limitations in the RFC finding, *see* 20 C.F.R. §§

06  404.1545(e), 416.945(e), and that the failure to do so was not harmless given that all of her past

07  relevant work and the jobs identified by the VE at step five require frequent handling or

08  fingering (AR 122, 124).

09          The Commissioner points to medical opinions finding a lack of neurological

10  impairments (AR 726, 754), an evaluating physician's failure to list hand tremors as an

11  impairment in a January 2006 evaluation (AR 751), and 2006 and 2007 assessments by a

12  reviewing physician consistent with the opinions of Dr. Schulman (AR 877, 918).   The

13  Commissioner asserts that, because the evidence showed plaintiff's hand tremors did not

14  impact her ability to perform basic work activities, the ALJ's finding was supported by

15  substantial evidence.   He maintains that the ALJ reasonably interpreted Dr. Schulman's

16  opinion that the hand tremors were not significantly limiting as indicating a lack of interference

17  with basic work activities.   The Commissioner further asserts that the ALJ appropriately

18  included manipulative limitations in limiting plaintiff to work that required only frequent, as

19  opposed to constant, reaching, handling, and fingering.   *See* SSR 83-10 ("'Frequent' means

20  occurring from one-third to two-thirds of the time.")

21          The Commissioner rejects the argument that the omission of Dr. Page's complete record

22  warrants remand.   He maintains that the ALJ's duty to further develop the record was not

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  triggered because the record was adequate to allow for proper evaluation of the evidence.

02  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("ALJ's duty to develop the record

03  further is triggered only when there is ambiguous evidence or when the record is inadequate to

04  allow for proper evaluation of the evidence.")  He asserts that, in light of the remaining

05  treatment notes from Dr. Page and Dr. Schulman's evaluation, the record was sufficiently

06  developed.[2]

07       The November 29, 2005 treatment note from Dr. Page reflects plaintiff's report as to the

08  tremor, including her observation that it had started to worsen, but is incomplete as to Dr.

09  Page's opinions.  (AR 810.)  The only legible portion of those opinions includes the

10  observation: "Difficulty with alternating hand movements."  (*Id.*)  At least two comments,

11  coming before and after that observation, are not complete, presumably due to some type of

12  copying error.

13       The ALJ does not mention Dr. Page's treatment note and, instead, focuses solely on the

14  report of examining physician Dr. Schulman.  (AR 42.)  While the ALJ did not err in relying

15  on Dr. Schulman's examination findings and opinion as supporting the conclusion that

16  plaintiff's hand tremor was not severe, the incomplete treatment note from Dr. Page created an

17  ambiguity in the record as to this impairment and should have prompted the ALJ to either

18  acquire the complete note or to contact Dr. Page for further information.  20 C.F.R. §§

19  _____

20       2 The Commissioner also indicated he would verify whether a complete copy of Dr.
    Page's incomplete record was actually presented to the ALJ.  However, there was no further

21  submission from the Commissioner on this subject.  The Commissioner did submit a new
    electronic administrative record (given the discovery of two pages relating to a different

22  claimant) which contains the same copy of Dr. Page's November 29, 2005 report.  (Dkt. 23-13
    at 5.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  404.1512(e), 416.912(e) (an ALJ has an obligation to recontact a treating physician or

02  psychologist when the evidence received is inadequate for a determination of disability);

03  *accord Mayes*, 276 F.3d at 459.   The Commissioner's suggestion that the ALJ accounted for

04  any related limitations at step four by finding plaintiff capable of "frequent reaching, handling,

05  and fingering[]" is not persuasive.   (AR 45.)   To the contrary, this would seem to correspond

06  only with the conclusion that the hand tremor was not severe.

07       On remand, the ALJ should pursue the ambiguity relating to Dr. Page's November 29,

08  2005 treatment note.   As it is not clear whether the complete report from Dr. Page would be

09  considered "new evidence," a sentence four remand is appropriate in this case.   § 405(g).

10  B.   Fibromyalgia

11       Plaintiff also raises a step two argument in her challenge to the credibility assessment.

12  She notes ALJ Schellentrager's 2005 finding of severe fibromyalgia (AR 140) and asserts that

13  the current ALJ gave that prior decision res judicata effect (AR 39).   She also points to new

14  evidence confirming the diagnosis of this condition.   (AR 727 (January 2005 report from Dr.

15  Lance May deeming plaintiff's fibromyalgia to be of marked severity (reflecting very

16  significant interference with work-related activities)); AR 751 and 921 (January 2006 and May

17  2007 reports from Dr. Jay Brown deeming plaintiff's fibromyalgia to be of moderate severity

18  (reflecting significant interference with work-related activities)); AR 755 (November 2005

19  report signed by physician's assistant Stephen Leaf and Dr. Brown deeming plaintiff's

20  fibromyalgia to be of marked severity); and AR 845 (Dr. Schulman diagnosed fibromyalgia in

21  August 2006 report).)   Plaintiff argues that the ALJ erred in failing to recognize or include this

22  impairment in his step two finding, to consider it in evaluating her credibility, and to provide

01  legally requisite reasons for rejecting the relevant medical opinions, *see Lester v. Chater*, 81

02  F.3d 821, 829 (9th Cir. 1996) (standards for evaluating medical opinions, discussed *infra*).

03      The Commissioner asserts that the ALJ accepted that plaintiff presented medical

04  evidence of an impairment that could reasonably be accepted to cause joint and back pain. (AR

05  46-47.)   He points to Dr. Mark Heilbrun's January 2003 report describing plaintiff as having

06  joint pain consistent with fibromyalgia (AR 617-22) and plaintiff's testimony that her

07  medication helped with her fibromyalgia (AR 107).   The Commissioner maintains that the

08  consideration of fibromyalgia at step two would not have changed the ALJ's findings and that

09  the omission can, therefore, be deemed harmless.   *Stout v. Comm'r of Soc. Sec. Admin.*, 454

10  F.3d 1050, 1055 (9th Cir. 2006) (recognizing application of harmless error in Social Security

11  context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate

12  disability conclusion.")

13      Plaintiff's assertion as to the res judicata effect of the prior ALJ decision is inaccurate.

14  The ALJ did not accept and incorporate all of the prior ALJ's findings.   Instead, he

15  appropriately addressed the presumption of continuing non-disability and concluded it had

16  been rebutted by evidence of new severe impairments.   *Chavez v. Bowen*, 844 F.2d 691, 693

17  (9th Cir. 1988) ("The principles of res judicata apply to administrative decisions[.]   The

18  claimant, in order to overcome the presumption of continuing nondisability arising from the

19  first administrative law judge's findings of nondisability, must prove 'changed circumstances'

20  indicating a greater disability.") (citations omitted).

21      However, the Court finds the ALJ's decision with respect to fibromyalgia deficient.   In

22  the most recent hearing, plaintiff testified as to a worsening of her symptoms in her back, feet,

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  ankle, joints, and arthritis in her shoulders, as well as symptoms in her elbows and hands.   (AR

02  98-102.)   She also directly discussed her fibromyalgia, both in relation to medication (AR 107)

03  and to her symptoms, including aching, soreness in her joints and muscles, and fatigue (AR

04  115).   Additionally, as noted by plaintiff, the record contained numerous new opinions as to

05  fibromyalgia.   (AR 727, 751, 755, 845 and 921.)

06          The ALJ recognized that plaintiff listed fibromyalgia in her disability report (AR 45)

07  and, without mentioning the condition itself, described plaintiff's testimony as to back and feet

08  pain, arthritis in her shoulders, elbows, and hands, and fatigue and soreness in her joints and

09  muscles (AR 46).   He also recognized the medical reports cited here by plaintiff and provided

10  reasons for rejecting the opinions in those reports limiting plaintiff to sedentary work.   (AR

11  49.)   However, there is no clear indication the ALJ considered plaintiff's fibromyalgia at step

12  two or otherwise.

13          It could be that the ALJ would not have deemed plaintiff's fibromyalgia severe at step

14  two or that, had he recognized this condition as severe, it would not have changed his

15  conclusions.   It is not clear whether the record contains evidence of the common test used for

16  diagnosing fibromyalgia.   *See*, *e.g.*, *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)

17  (describing rule of thumb that an individual must have at least 11 out of 18 specific "tender

18  spots" on the body to be diagnosed as having fibromyalgia); SSR 99-2p (noting "American

19  College of Rheumatology criteria for [fibromyalgia] (which includes a minimum number of

20  tender points)").   The new reports recognizing plaintiff's fibromyalgia may well have been

21  based on plaintiff's assertion of the diagnosis.   For example, while Dr. Schulman recognized

22  the condition, she appeared to base this on plaintiff's report and found that plaintiff had no

01  work-related restrictions.  (AR 49, 841-46.)  Two reports signed by physician's assistant

02  David Warner, one or both of which appear to have been approved by a physician, also raise

03  questions about this condition. (AR 930 (August 2007 report from Warner deeming plaintiff's

04  fibromyalgia "(per hx)" of mild severity (reflecting no significant interference with

05  work-related activities) and stating that fibromyalgia "is difficult both to diagnosis and to

06  treat.") and AR 926-27 (January 2008 report from Warner deeming plaintiff's fibromyalgia of

07  moderate severity, but finding plaintiff capable of light work, noting she had not obtained any

08  significant treatment, and expressing concern as to how motivated plaintiff was in terms of

09  improvement).)   Additionally, another physician's assistant and a physician, in June 2008 and

10  January 2009 respectively, deemed plaintiff's fibromyalgia to be of mild severity.  (AR 934

11  and 939.)

12      Yet, the ALJ did not himself reach the conclusion that plaintiff's fibromyalgia was not

13  severe and the Commissioner fails to sufficiently support his contention that the failure to

14  consider this impairment was harmless.   There is, for example, no indication the ALJ

15  accounted for fibromyalgia symptoms in the step four finding.  *See Lewis v. Astrue*, 498 F.3d

16  909, 911 (9th Cir. 2007) (failure to list impairment as severe at step two harmless where

17  limitations considered at step four).   As such, the ALJ should be required to directly address

18  the issue of plaintiff's fibromyalgia, at step two and all subsequent steps, on remand.

19                                    Cognitive Problems

20      Plaintiff asserts that she suffers from cognitive problems caused by a combination of her

21  learning disabilities, bipolar/schizoaffective disorder, and pain.  She maintains that the ALJ

22  erred in finding her capable of performing detailed work despite these problems.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01      The ALJ considered plaintiff's learning disability as follows:

02      In her February 2005 decision, Judge Schellentrager found evidence of a
        learning disability, but concluded it was non-severe because it did not
03      significantly interfere with the claimant's activities.   This finding was upheld
        by the Appeals Council and the District Court.   While a psychological
04      evaluation by Cherie Valeithian, Ph.D., in January 2006 confirmed the diagnosis
        of learning disability, I continue to find, for similar reasons noted by Judge
05      Schellentrager, that the claimant's learning disability is non-severe.   First, in
        her function reports, the claimant reported having no problems remembering
06      things, concentrating, completing tasks, understanding, or following spoken or
        written instructions.   Second, the record indicates that she was taking courses in
07      child development, a three-quarter program, at Renton Technical College in
        2006 and 2007.   In February 2007, she reported plans to graduate from the
08      program in April 2007.   Finally, in 2008, she worked as a server and food prep
        worker at a teriyaki restaurant.   At the hearing, she testified that she left this job
09      only because she was laid off of work.   She did not report any cognitive
        problems learning or performing the job.   I conclude that the claimant's
10      learning disability is non-severe because it does not result in any significant
        functional limitations.

11

12  (AR 43; internal citations to record omitted.)   ALJ Schellentrager had relied on plaintiff's

13  average to superior IQ testing results and the opinion of the testing physician that plaintiff's IQ

14  did not preclude her from performing her then current work as a caretaker, or other employment

15  duties, and that plaintiff "'demonstrated an ability to maintain persistence and pace, cooperate

16  with instructions, and complete simple and complex tasks.'"   (AR 139-41.)   ALJ

17  Schellentrager also pointed to plaintiff's report to another physician that she had no difficulty

18  concentrating when watching movies or engaging in daily activities.   (AR 141.)

19      The ALJ considering plaintiff's current claim did find her schizoaffective disorder

20  severe.   However, he deemed her bipolar disorder non-severe, pointing to Dr. Valeithian's

21  assessment of the condition as mild with medication and plaintiff's report that her manic

22  symptoms occurred only one to two times per year.   (*Id*.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01      The ALJ found plaintiff had moderate difficulties with concentration, persistence, and

02   pace, explaining:

> She has a history of auditory hallucinations, but they have been controlled with
> medications.  She drives, does puzzles, and manages her finances.  She can
> follow spoken and written instructions well.  She can complete tasks.  She
> does not have significant memory or concentration difficulties.  In 2006 and
> 2007, she was taking classes in child development at Renton Technical College.
> In 2008, she worked part-time at a teriyaki restaurant without any documented
> cognitive problems; she was laid off only due to lack of work.

07   (AR 44; internal citations to record omitted.)   He concluded plaintiff was capable of

08   performing simple and detailed, but not complex, tasks and instructions:

> The claimant's results on cognitive testing indicates that she retains the ability to
> perform simple and detailed, but not complex, tasks.  For instance, on the
> Wechsler Adult Intelligence Scale (WAIS-III) in January 2006, she obtained a
> verbal IQ score in the low average range and full scale and performance IQ
> scores in the average range.  Her WAIS subtest scores were generally low
> average to average.  On the Wechsler Memory Scales (WMS-III) indexes, she
> obtained generally low average to average scores.  Of note is that her working
> memory index score was in the average range.  In August 2006, she showed
> some concentration difficulties and some blunting in her affect.  She also had
> problems with serial calculations.   However, her mental status examination was
> otherwise [normal].   She was fully oriented.   She performed well on
> immediate and five-minute recall of items.  She could follow a three-step
> command.   She adequately interpreted similarities and differences.   She
> displayed good judgment and insight.

17   (AR 45, 48.)

18      In challenging the conclusion as to detailed work, plaintiff describes Dr. Valeithian's

19   January and February 2006 testing results.   (Dkt. 15 at 9-11 (citing AR 759-73, 826-28).)   Dr.

20   Valeithian opined that the results were consistent with plaintiff's reported learning disabilities.

21   (AR 766-69.)   She assessed plaintiff with moderate limitations in her ability to understand,

22   remember, and follow complex (more than two step) instructions and to learn new tasks, and

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  marked limitations in her ability to exercise judgment, make decisions, and respond

02  appropriately to and tolerate normal work pressures and expectations.  (AR 826-27.)[3]

03       Plaintiff takes issue with the ALJ's reliance on her class attendance and part-time work

04  over the opinions of Dr. Valeithian.   She asserts an absence of evidence as to the difficulty of

05  her classes, how well she understood the material, or whether she was able to graduate, and

06  points to her mother's April 2009 testimony that she was unable to complete a class due to

07  mental and physical issues.  (AR 331.)  Plaintiff also points to her testimony that, at the

08  teriyaki shop, she served customers and peeled vegetables between six and twelve hours a

09  week.  (AR 93-94.)

10       Plaintiff further asserts that the ALJ failed to adequately address other medical opinions

11  addressing her cognitive problems.  She points to the August 2006 report from examining

12  physician Dr. Shamin Gopinath diagnosing her with schizoaffective disorder and describing her

13  as presenting "with significant mood and psychotic symptoms of longstanding nature as well as

14  learning difficulty and chronic pain complaints[,]" and as exhibiting "significant blunted affect,

15  difficulty with processing, and apparent cognitive blunting."  (AR 835-40.)  Plaintiff also

16  points to the 2006 and 2007 opinions of reviewing psychologists Drs. Arthur Lewy and Alex

17  Fisher that she suffered from schizoaffective disorder and could follow only simple one and two

18  step instructions. (AR 880 and 917.)

19       Plaintiff argues that, at the very least, the ALJ should have further developed the record

20  with respect to her learning disabilities in accordance with the recommendation of Dr.

21  _____

22       3 Plaintiff mistakenly stated in her opening brief that Dr. Valeithian assessed marked
     limitations in relation to concentration, persistence, and pace.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01   Schulman.   (AR 846 (noting plaintiff's report of a learning disability and trouble reading and

02   stating that "further evaluation of this might be necessary."))   She asserts that the ALJ should

03   have then considered the combined effect of her learning disabilities along with her chronic

04   pain, bipolar/schizoaffective disorder, and the side effects of her numerous medications.   *See*,

05   *e.g.*, *Lester*, 81 F.3d at 829 ("The claimant's illnesses 'must be considered in combination and

06   must not be fragmentized in evaluating their effects.'") (quoted sources omitted) and SSR

07   96-7p (ALJ must consider side effects of medication).

08           Plaintiff's arguments raise the question of whether the ALJ adequately addressed the

09   medical opinions from the examining and reviewing physicians discussed above.   In general,

10   more weight should be given to the opinion of a treating physician than to a non-treating

11   physician, and more weight to the opinion of an examining physician than to a non-examining

12   physician. *Lester*, 81 F.3d at 830   Where not contradicted by another physician, a treating or

13   examining physician's opinion may be rejected only for "'clear and convincing'" reasons.   *Id*.

14   (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).   Where contradicted, a

15   treating or examining physician's opinion may not be rejected without "'specific and legitimate

16   reasons' supported by substantial evidence in the record for so doing."   *Id*. at 830-31 (quoting

17   *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).   The ALJ may reject physicians'

18   opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical

19   evidence, stating his interpretation thereof, and making findings."   *Reddick v. Chater*, 157 F.3d

20   715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751).   Rather than merely stating her

21   conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than

22   the doctors', are correct."   *Id*.   (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.

01   1988)).

02        In support of his conclusion that plaintiff retained the ability to perform detailed work,

03   the ALJ described the testing results from Dr. Valeithian as falling within the low average to

04   average range.   (AR 48 (citing AR 765-70).)   He also pointed to Dr. Gopinath's report, which

05   stated that, while "she showed some concentration difficulties and some blunting in her

06   affect[]" and "also had some problems with serial calculations[,]" "her mental status

07   examination was otherwise [normal,]" she was "fully oriented[,] . . . performed well on

08   immediate and five-minute recall of items[,] . . . could follow a three-step command[,] . . .

09   adequately interpreted similarities and differences[,]" and "displayed good judgment and

10   insight."   (*Id.* (citing AR 835-40.)

11        The ALJ addressed the specific limitations assessed by Dr. Valeithian:

12        First, as I discussed above, I find that the claimant's bipolar disorder and
          learning disorder are non-severe.   Second, I do not find support for Dr.
13        Valeithian's assessment of the claimant's ability to learn new tasks.   In 2008,
          the claimant was able to work part-time at a teriyaki restaurant without any
14        reported cognitive difficulties; she stopped doing this job only because there
          was not enough work.   Third, Dr. Valeithian's assessment of the claimant's
15        ability to exercise judgment and make decisions is inconsistent with the mental
          status examination she administered in January 2006.   At that time, the
16        claimant showed good judgment and fair insight.   Fourth, Dr. Valeithian's
          assessment of the claimant's social functioning is inconsistent with the
17        claimant's activities.   The claimant gets along well with family and friends.
          She previously lived with her mother and now lives with her brother.   She goes
18        shopping, to the movies, and out to dinner with friends.   She maintains a good
          relationship with her ex-boyfriend.   She occasionally baby sits a friend's infant.
19        She attends church weekly.   She has no history of problems interacting with
          coworkers or supervisors.   Finally, I discount Dr. Valeithian's assessment of
20        the claimant's ability to relate appropriately and tolerate the expectations of a
          normal work setting.   This opinion is largely based on the claimant's subjective
21        complaints, which I find are not fully credible.   Also, the opinion is inconsistent
          with the mental health evidence, which indicates that the claimant's symptoms
22        have significantly improved with psychiatric medication and counseling.

01   (AR 50; internal citation to record omitted.)   The ALJ also, in deeming plaintiff's learning

02   disorder non-severe at step two, relied on the fact that plaintiff had not reported any problems

03   remembering, concentrating, completing tasks, or handling written or spoken instructions in

04   completing forms as to her functional abilities (AR 43, 289, 317), did not testify as to any

05   cognitive problems in relation to her work at the restaurant (AR 43, 93-94, 108), performed that

06   restaurant work, and took classes in child development (AR 43.)   He additionally, in finding

07   moderate difficulties with concentration, persistence, and pace, considered the fact that plaintiff

08   does puzzles and manages her finances.   (AR 44.)

09        The ALJ also addressed the opinions of Drs. Lewy and Fisher that plaintiff could follow

10   simple one and two step instructions, concentrate for up to two hours at a time, and should have

11   limited contact with the public.   (*Id.* (citing AR 878-80, 917 (assessing plaintiff as moderately

12   limited in her ability to understand, remember, and carry out detailed instructions and to interact

13   appropriately with the general public).)   The ALJ gave "some weight" to these opinions,

14   explaining:

15          However, based on the claimant's WAIS and WMS-III results as well as her
            activities, which include taking courses at Renton Technical College in 2006
16          and 2007 and working part-time at a teriyaki restaurant in 2008, I find that she
            retains the ability to perform simple and detailed, but not complex, tasks.
17          Giving the claimant's social activities, which include going to church, spending
            time with family and friends, shopping and going outside daily, I find that the
18          claimant can interact appropriately with the general public without any
            significant limitations.

19

20   (*Id.*)

21        The ALJ did not directly assess the report from Dr. Gopinath.   However, as noted

22   above, he relied on the report in reaching his conclusion as to plaintiff's ability to perform

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01  simple and detailed, but not complex, tasks.  (AR 48 (citing AR 835-40).)  He also cited the

02  report in support of the conclusion that plaintiff's manic symptoms and auditory hallucinations

03  were controlled by medication, that she had mild restrictions in activities of daily living, and

04  that she retained the ability to perform simple and detailed, but not complex, tasks.  (AR 43-44,

05  48 (citing AR 835-36).)

06       The medical opinions do provide support for a conclusion that plaintiff should not

07  perform detailed tasks.  However, the ALJ adequately countered those opinions with contrary

08  evidence, including testing results from Drs. Valeithian and Gopinath, and plaintiff's failure, on

09  two separate occasions, to identify any problems remembering, completing tasks,

10  concentrating, understanding, or following written or spoken instructions (AR 289, 317

11  (plaintiff stated that she followed written and spoken instructions "good" on one occasion and

12  "well" on another).)  Also, while her class work and prior part time employment might not

13  alone be persuasive evidence of her ability to perform detailed work, these factors were

14  appropriately considered by the ALJ as relevant to the decision.

15       Given the reasoning provided by the ALJ and excerpted above, plaintiff fails to

16  establish error in the assessment of the opinions from Drs. Valeithian, Lewy, and Fisher.

17  Arguably, it could be found that the ALJ erred in not directly addressing the report from Dr.

18  Gopinath.  He did not, for instance, recount various portions of the report favorable to plaintiff.

19  (*See*, *e.g.*, AR 840 (finding plaintiff's prognosis "guarded as she appears to have had persistent

20  depressive symptoms as well as ongoing psychotic symptoms despite medication

21  management[]" and noting plaintiff "exhibited numerous difficulties in intellectual

22  functioning[,]" and "limited ability to focus and concentrate and significant blunting of the

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01    affect."))   However, he did not necessarily reject Dr. Gopinath's opinions and, in fact, relied

02    on his findings in finding plaintiff capable of performing simple and detailed tasks.   (AR 48,

03    840.)   Also, although not noted by the ALJ, Dr. Gopinath opined: "At this time, the claimant's

04    suitability to return to work would be good should her mood and psychotic symptoms be under

05    adequate control with appropriate medication and psychosocial intervention."   (*Id*.)   The

06    Court finds that the ALJ adequately addressed the opinions contained in Dr. Gopinath's report.

07    However, because this matter requires remand for other reasons, the ALJ should take the

08    opportunity to directly address and assign weight to the report from Dr. Gopinath.

09          The Court must also address whether plaintiff persuasively establishes that the ALJ

10    should have further developed the issue of her learning disabilities, and/or the combined impact

11    of her learning disabilities along with her chronic pain, bipolar/schizoaffective disorder, and the

12    side effects of her medications.   In addition to Dr. Schulman's assertion that further evaluation

13    of plaintiff's asserted learning disability "might be necessary[]" (AR 846), both Dr. Valeithian

14    and Dr. Gopinath addressed the possible need for further information on this issue.   (AR 770,

15    828 (Dr. Valeithian indicated that additional achievement testing was necessary to diagnose or

16    rule out specific learning disabilities and explained that the necessary test was not authorized

17    for use in the DSHS evaluation he conducted) and (AR 840 (Dr. Gopinath noted plaintiff's

18    report of a learning disability diagnosis and stated:   "However, outside neuropsychological

19    testing and intelligence testing has not been provided to substantiate this diagnosis."))

20          As reflected above, the "ALJ's duty to develop the record further is triggered only when

21    there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of

22    the evidence."   *Mayes*, 276 F.3d at 459-60.   *See also Tonapetyan v. Halter*, 242 F.3d 1144,

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is

02 inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct

03 an appropriate inquiry.'") (quoted source omitted).   In this case, the Court does not find

04 reversible error.   As argued by the Commissioner, the ALJ accepted the existence of a learning

05 disability, relying on Dr. Valeithian's report, but nonetheless found that this impairment did not

06 result in any significant functional limitations, providing several legitimate reasons for this

07 conclusion, and pointing to the prior ALJ's reasoning.   The ALJ also provided reasoning for

08 the specific RFC finding that plaintiff could perform simple and detailed, but not complex,

09 tasks.   Additionally, while plaintiff states in her reply that the record suggests her tremor may

10 have been a side effect of medication, this assertion alone does not establish a functional impact

11 resulting from medications, *Thomas*, 278 F.3d at 960 (claimant offered "no objective evidence

12 that her medications affected her concentration or caused dizziness[]"), or even suggest a side

13 effect relevant to the cognitive limitations at issue in this argument.   For these reasons, plaintiff

14 fails to establish the need for further evaluation of this issue on remand.

15                                                    Credibility

16        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

17 reject a claimant's testimony.   *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

18 *See also Thomas*, 278 F.3d at 958-59.   In finding a social security claimant's testimony

19 unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

20 supported by substantial evidence.   "General findings are insufficient; rather, the ALJ must

21 identify what testimony is not credible and what evidence undermines the claimant's

22 complaints."   *Lester*, 81 F.3d at 834.   "We require the ALJ to build an accurate and logical

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01  bridge from the evidence to her conclusions so that we may afford the claimant meaningful

02  review of the SSA's ultimate findings."   *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

03  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

04  inconsistencies either in his testimony or between his testimony and his conduct, his daily

05  activities, his work record, and testimony from physicians and third parties concerning the

06  nature, severity, and effect of the symptoms of which he complains."   *Light v. Social Sec.*

07  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

08      The ALJ in this case found plaintiff's statements concerning the intensity, persistence,

09  and limiting effects of her symptoms not credible to the extent inconsistent with the RFC

10  assessment, providing the following reasoning:

> The claimant is not fully credible.   The objective evidence does not corroborate her complaints of disabling back pain.   For instance, in August 2006, she had some decreased dorsolumbar range of motion, but negative straight leg raising bilaterally.   She did not have any paravertebral muscle spasm, crepitus, or effusion.   She had 4/5 muscle strength throughout the upper and lower extremities.   She had intact sensation to pinprick, vibration, and position in the bilateral lower extremities.   She had intact sensation to pinprick, vibration, and position in the bilateral lower extremities.   She had no difficulty moving around the examination room, including getting on and off the examination table or removing her shoes and socks.   In June 2008, x-rays of the lumbar spine revealed spondylolisthesis of L5 on L1, with a pars defect at that level, and only minor degenerative changes at L4-5 and L3-4.   On examination in November 2008, she had some reduced range of motion in the back.   There was no evidence of guarding, rigidity, or spasm.   She had excellent strength and normal sensation throughout the lower extremities, with normal range of motion and no evidence of instability.   A straight leg raise did not produce pain.   In February 2009, inspection of the back was unremarkable.   She had some limitations on range of motion, but no tenderness to palpation throughout the mid to lower back.   She had essentially 5/5 motor strength in the lower extremities, with grossly intact sensation bilaterally.   She had a negative straight leg raise bilaterally.
>
> While the claimant has some upper extremity problems, her limitations are not

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

as severe as she alleges.   For instance, in August 2006, she had decreased range of motion in the shoulder joints, but full range of motion in the elbows, forearms, wrists, and thumbs bilaterally.   She had 4/5 motor strength in both upper extremities, including 4/5 grip strength.   Dr. Schulman did not find any evidence of any significant manipulative restrictions.   In November 2008, she had normal strength, sensation, and reflexes bilaterally in the upper extremities. She had normal range of motion in the upper extremities without pain and with no evidence of deformity or instability.

Although the claimant has a congenital deformity in her feet, involving the loss of multiple toes bilaterally, and a history of left ankle repair in October 2005, the record does not support her testimony that she could stand and walk for only a few blocks.   For example, in February 2006, after undergoing a month of physical therapy following her left ankle surgery, she was discharged with the goal of tolerating walking for up to 40 minutes having been met.   On examination in February 2006, Nicholas Heath, DPM, reported that the claimant had normal range of motion and excellent stability in the left ankle, with no swelling.   In August 2006, she had an essentially normal gait.   She could walk on her heels and in tandem without difficulty.   She did not require a device to assist with ambulation.   She had 4/5 motor strength throughout the lower extremities.   Dr. Schulman found no evidence of standing or walking restrictions.   In November 2008, the claimant did not have an obvious limp or encumbrance on ambulation.   She had normal coordination in both lower extremities.   She had excellent strength throughout the lower extremities, with no signs of instability.   In February 2009, she had essentially 5/5 motor strength throughout the lower extremities including dorsiflexion and plantar flexion of the ankles and eversion of the feet.   Dr. Blair also reported that the claimant could ambulate on both heels and on her toes without difficulty throughout the room.

The credibility of the claimant's pain complaints is undermined by evidence of symptom magnification during examinations.   For example, in August 2006, Dr. Schulman reported that, when directly observed in the examination room, the claimant walked incredibly slowly.   But when not directly observed, the claimant ambulated with a normal gait and moved around the room without difficulty.   In November 2008, Dr. Blair noted that the location of the claimant's lumbar pain complaints were higher than the location of the spondylolisthesis evidenced by her x-rays.   In February 2009, Dr. Blair noted a positive Waddell's sign on inspection of the claimant's back.

While the claimant has difficulty hearing in a crowded environment or an environment with a lot of ambient noise, she hears relatively well in other settings with the help of hearing aids.   For instance, in August 2006, she did not

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

have any hearing difficulties during a consultative physical examination. She also did not have any apparent problems [listening] or responding to my questions at the hearing.

With regard to mental problems, the claimant has a schizoaffective disorder. Although she has a history of auditory hallucinations, they have since been well-controlled by medication. Additionally, from February 2003 through October 2006, treatment notes from the claimant's psychiatrist, Jessy Ang, M.D., indicate that her mood symptoms have significantly improved with medication and counseling.

. . .

The claimant's activities indicate that she is capable of greater physical and mental functional capacity than alleged. She cares for her personal hygiene and grooming, prepares simple meals, does some housework, including the dishes and laundry, shops for food, can go out unaccompanied, and baby sits occasionally for her friend's young child. She gets along with family and friends. She lived with her mother for several years before moving in with her brother. She goes out with friends to movies, shopping, and dinner. She attends church weekly. She drives, does puzzles, and manages her finances. In 2008, she worked two to three hours per day for three to four days per week at a teriyaki restaurant, serving food and doing food prep. She left this work only because she was laid off due to lack of work. Prior to her job at the restaurant, she worked a couple of hours per week in home health care, watching a child with a disability. She stopped doing this job also because of lack of work. At the hearing, she testified that she currently lived with her brother. She reported doing most of the household cleaning and grocery shopping. She reported that she did her own cooking and laundry. She stated that she did not require help getting dressed.

(AR 46-48; internal citations to record omitted.) The credibility assessment also included the discussion of plaintiff's cognitive abilities, excerpted above. (AR 48.)

Plaintiff challenges the ALJ's finding that the objective evidence did not corroborate her complaints of disabling back pain as both legally and factually incorrect. She notes that a claimant need not produce objective medical evidence of pain. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). She points to numerous documents in the record supporting her back pain (Dkt. 15 at 13-14 (citing AR 740, 920, 926-27, 930, 932-34, 938-39, 941, and 944)),

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

01   and argues that the ALJ failed to consider fibromyalgia as a cause of her back pain.

02        Plaintiff next argues that the ALJ similarly erred in basing his decision as to her upper

03   extremity problems on a lack of objective findings, and proffers contrary evidence and opinions

04   as to associated limitations in handling, pushing, pulling, reaching, and range of motion.   (AR

05   920, 926-27, 930, 938.)   She describes this error as significant because all of her past relevant

06   work and all but one of the jobs identified by the vocational expert require frequent reaching.

07   (AR 122, 124.)

08        Plaintiff also asserts that her difficulty walking was attributable not only due to her

09   congenital foot deformities, but also to residuals of ankle surgery, as well as back pain and

10   fatigue.  (AR 111.)   She points to 2007 and 2008 reports from physician's assistant Warner

11   reflecting that her feet were unstable and she should not stand for prolonged periods (AR

12   929-30) and describing her as having marked deformities of the feet and an antalgic gait (AR

13   925-26) (but assessing foot deformities as moderate in severity).

14        Plaintiff avers that Dr. Schulman's suggestion of symptom magnification is inconsistent

15   with all of the other evidence in the record.  She notes her report to Dr. Blair that she had

16   experienced a sudden onset of mid back pain, higher than her previous low back pain, after

17   lifting her niece (AR 941, 944), and asserts that Waddell signs reveal that a symptom may have

18   a non-physical cause, but do not measure malingering.  (*See* Dkt. 15 at 16 n.2 (citing an article

19   reflecting no significant correlation between Waddell signs and malingering).)

20        Finally, plaintiff asserts that the cited exhibits in relation to her activities do not support

21   the ALJ's finding, and notes the Ninth Circuit's recognition that "the mere fact that a plaintiff

22   has carried on certain daily activities, such as grocery shopping, driving a car, or limited

01  walking for exercise, does not in any way detract from her credibility as to her overall

02  disability." *Vertigan*, 260 F.3d at 1050.   She also challenges the accuracy of the assertion that

03  she left prior work due only to lack of work, pointing to her testimony that she could not

04  perform the job in the teriyaki restaurant due to the standing requirements, pain in her feet and

05  back, and fatigue, and could no longer perform companion work given the requirement to lift

06  children out of their wheelchairs and in and out of cars.   (AR 117-20.)

07        The Commissioner asserts that, because there was affirmative evidence of malingering

08  in this case, the ALJ was not required to provide clear and convincing reasons for rejecting

09  plaintiff's testimony.   *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1160 (9th Cir. 2008).

10  Malingering "is the intentional production of false or grossly exaggerated physical or

11  psychological symptoms, motivated by external incentives such as . . .  avoiding work[.]"

12  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 739

13  (4th ed. 2000).   In asserting malingering, the Commissioner points to plaintiff's prior denied

14  applications for benefits (*see* AR 135), as well as provider notes in the record (AR 567 (March

15  2001 notes from Drs. Supriya Kelkar and Wayne Tsuji:   "Patient brought in form for disabled

16  parking for the DMV, and which we told her that she is not disabled and that we would not fill

17  out the form for her.") and AR 817 (June 2003 note from ARNP Roberta Dacus:   "I do not feel

18  that it is warranted for her to be on disability and do not feel like that would be beneficial to her

19  overall mental status and long term health care."))   He states that the ALJ discussed

20  affirmative evidence of malingering in pointing to evidence of symptom magnification.   (AR

21  47.) (*See also* AR 843 (Dr. Schulman noted plaintiff was only able to explain her medical

22  problems "in very vague terms" and had "significant difficulty providing any detail on her

01  problems."; he also observed that she had no difficulty getting on or off the examination table or

02  with removing socks and shoes).)   The Commissioner notes that the article relied on by

03  plaintiff in criticizing the relevance of Waddell signs was not before the ALJ, and provides his

04  own citation regarding Waddell signs.   (Dkt. 17 at 16.)   The Commissioner further argues that

05  the ALJ nonetheless did provide specific reasons for finding plaintiff not credible (*id*. at 16-19),

06  and, as stated above, asserts that the ALJ's consideration of fibromyalgia would not have

07  changed his findings, and that the ALJ accommodated plaintiff's upper extremity difficulties by

08  a limitation to frequent reaching.

09        The Commissioner does not successfully support his assertion as to malingering.   The

10  ALJ need not make a specific *finding* of malingering.   *Carmickle*, 533 F.3d at 1160 n.1.

11  Instead, the question is whether there is affirmative evidence of malingering.   *Id*.; *accord*

12  *Smolen*, 80 F.3d at 1283-84.   In this case, the ALJ provided several examples of what he

13  perceived as evidence of symptom magnification.   While one or more of the examples were

14  appropriately relied upon, it is not at all clear that the evidence of symptom magnification

15  demonstrates affirmative evidence of malingering.   *See*, *e.g.*, *Sandoval v. Astrue*, No.

16  CV-08-0303-CI, 2009 U.S. Dist. LEXIS 121435 at * 12 (E.D. Wash. Dec. 31, 2009) (Mag. J.

17  Imbrogno) ("Here, although the ALJ referenced observations by medical providers of symptom

18  magnification, potential secondary gain factors and excessive pain behavior . . . , there is no

19  affirmative evidence of malingering.")   Nor do plaintiff's prior applications or the medical

20  reports pointed to by the Commissioner, neither of which the ALJ relied upon, *see Connett v.*

21  *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming based on evidence

22  the ALJ did not discuss), constitute affirmative evidence of malingering.

01          In any event, the ALJ did provide clear and convincing reasons for finding plaintiff less

02   than fully credible, including evidence of symptom magnification, unsupportive objective

03   evidence in relation to her back, upper extremity, foot, hearing, and mental impairments,

04   evidence of daily activities showing greater capacity than alleged, and evidence relating to her

05   past work.   "While subjective pain testimony cannot be rejected on the sole ground that it is not

06   fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

07   in determining the severity of the claimant's pain and its disabling effects."   *Rollins v.*

08   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p.   *Accord Cotton*, 799 F.3d at 1407

09   ("[I]t is improper as a matter of law for an ALJ to discredit excess pain testimony *solely* on the

10   ground that it is not fully corroborated by objective medical findings.") (emphasis added);

11   *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (minimal objective findings can, when

12   other reasons are present, undermine a claimant's credibility).   The ALJ in this case did not

13   reject plaintiff's testimony based solely on the lack of corroborative objective evidence.   Nor

14   does plaintiff establish reversible error in the ALJ's consideration of the evidence relating to her

15   back, upper extremity, and foot problems.   While plaintiff points to evidence supportive of

16   these problems, the ALJ pointed to contrary evidence and appropriately fulfilled his

17   responsibility for resolving conflicts in the record.   *Tommasetti v. Astrue*, 533 F.3d 1035,

18   1041-42 (9th Cir. 2008).

19          The ALJ also appropriately considered plaintiff's daily activities and past work. *Light*,

20   119 F.3d at 792.   The consideration of plaintiff's activities does not reveal an expectation that

21   plaintiff needed to be "'utterly incapacitated' in order to be disabled."   *Vertigan*, 260 F.3d at

22   1050 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   Also, while plaintiff testified

01  that she could not have performed her teriyaki restaurant job full-time due to various physical

02  problems and could not now perform her companion work due to her limitations, she did testify,

03  as noted by the ALJ, that she left her prior jobs due to a lack of work.   (AR 93, 95-97, 117-20.)

04       Plaintiff does point to some arguable errors in the credibility assessment.   Dr. Blair's

05  observation as to a different location of back pain is explained by plaintiff's description of an

06  incident of sudden onset of pain.   (AR 941, 943-44.)   Also, the relevance of the Waddell signs

07  is unclear given the absence of any discussion within the physician's report.   *See*, *e.g.*,

08  *Lira-Iniguez v. Astrue*, 1:07-cv-01054 OWW GSA, 2009 U.S. Dist. LEXIS 23802 at *42-43,

09  n.2 (E.D. Cal. Mar. 25, 2009) (noting that, while a physician identified Waddell signs, "he did

10  not conclude that those signs meant Plaintiff was malingering or ascribe any significance to

11  those signs[,]" and stating that, while the Commissioner pointed to an article supporting the

12  conclusion that these signs "are an indication of symptom magnification or malingering[,]" it

13  was "not the role of [the] Court to look beyond the evidence presented to the ALJ and/or engage

14  in such an analysis.")

15       Given the existence of other valid reasons for the ALJ's decision, any errors in the

16  credibility assessment can be deemed harmless.   *Carmickle*, 533 F.3d at 1162-63.   However,

17  the ALJ's failures at step two could have implications on the credibility assessment.   As such,

18  the ALJ should reconsider plaintiff's credibility as needed on remand.

19                                 Lay Testimony

20       Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

21  to work is competent evidence.   *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

22  The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each

01 witness.  *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members

02 because, inter alia, they were "understandably advocates, and biased" amounted to "wholesale

03 dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a

04 reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918

05 (9th Cir. 1993)).

06       The ALJ considered the lay witness testimony in this case as follows:

07       I have reviewed lay witness statements.  The record contains lay witness
      statements from the claimant's mother, ex-boyfriend, and stepsister-in-law.  In
08       May 2006, the claimant's mother, Nancy Staley, reported that the claimant had
      problems with hearing loss, deformed feet, depression, fibromyalgia, hand
09       tremors, learning disability, and lower back pain.  She did not believe that the
      claimant could ever earn a living wage on her own or find a job that would offer
10       her medical benefits.  She reported that the claimant had difficulty lifting,
      standing, sitting, squatting, kneeling, climbing stairs, walking, and hearing.
11       She reported that the claimant had 60 percent hearing loss and wore hearing
      aids.  In April 2009, she stated that the claimant's health problems were getting
12       worse and worse.  She stated that she did not know how the claimant would
      manage financially without Social Security.  In April 2009, the claimant's
13       stepsister-in-law, Nguyen Staley, reported that the claimant often complained of
      back, hand, and foot pain at family gatherings.  She stated that the claimant
14       wore orthotic shoes due to foot deformities.  She reported that the claimant had
      very weak reading and writing skills.  She stated that the claimant had so much
15       pain and fatigue that the claimant could not work.   In April 2009, Charles Shay,
      the claimant's ex-boyfriend, reported that the claimant had hearing problems
16       even with hearing aids.  He stated that the claimant had difficulty sitting and
      standing for any length of time.  He reported that the claimant had a lot of
17       difficulty understanding anything written.

18       I give some weight to the statements of the claimant's family and ex-boyfriend,
      but only to the extent that they are consistent with the evidence.  While the
19       claimant has some limitations due to her physical impairments, they are not to
      the extent of disability.   Recent examinations show fairly benign findings in the
20       back, upper extremities, and lower extremities.  Although the claimant has
      difficulty hearing in an environment with loud ambient noise, her hearing aids
21       permit her to hear relatively well in other settings.   While the claimant has been
      diagnosed with a learning disorder, I find that it is non-severe.  In 2006 and
22       2007, she was taking college level classes in child development.  In 2008, she

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -30

01      worked part-time at a teriyaki restaurant without any reported cognitive
problems.  Considering also the claimant's other daily activities, I conclude
02      that the claimant retains the physical ability to perform light exertional work and
the mental ability to carry out simple and detailed, but not complex, tasks.

03

04  (AR 48-49.)

05        Plaintiff relies on *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009), in challenging

06  the ALJ's assessment of the lay testimony.   In that case, the Ninth Circuit held that "the ALJ

07  should not have discredited [lay] testimony on the basis of its relevance or irrelevance to

08  medical conclusions." *Id*. at 1116 (citing 20 C.F.R. § 404.1513(d) (providing that lay witness

09  testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it

10  affects [his] ability to work"); and *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)

11  ("[F]riends and family members in a position to observe a claimant's symptoms and daily

12  activities are competent to testify as to her condition."))   The Court further held that an ALJ

13  could not "discredit . . . lay testimony as not supported by medical evidence in the record."  *Id*.

14  (citing *Smolen*, 80 F.3d at 1289 ("The rejection of the testimony of [the claimant's] family

15  members because [the claimant's] medical records did not corroborate her fatigue and pain

16  violates SSR 88-13, 1988 SSR LEXIS 14, which directs the ALJ to consider the testimony of

17  lay witnesses where the claimant's alleged symptoms are unsupported by her medical

18  records."))   Plaintiff adds that, for reasons previously identified, the evidence related to her

19  class attendance, prior work, and daily activities was either overstated or insufficient to draw

20  any meaningful conclusions.

21        The Commissioner distinguishes the ALJ's reasoning in this case from that addressed in

22  *Bruce*, asserting that the ALJ properly relied on the fact that the medical evidence *contradicted*

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -31

01   the statements of the lay witnesses.  *Lewis*, 236 F.3d at 512 (contradictory medical records

02   supported ALJ's rejection of lay testimony as to symptoms).   He contends that the ALJ also

03   appropriately relied on plaintiff's daily activities, college class attendance, and past work.

04          The Ninth Circuit has found that "[i]nconsistency with medical evidence is [a germane]

05   reason [for discrediting lay testimony]." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

06   2005) ("The ALJ accepted the testimony of Bayliss's family and friends that was consistent

07   with the record of Bayliss's activities and the objective evidence in the record; he rejected

08   portions of their testimony that did not meet this standard. The ALJ's rejection of certain

09   testimony is supported by substantial evidence and was not error.")  *See also Greger v.*

10   *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding germane the ALJ's reasoning that the

11   statements of a lay witness were inconsistent with the claimant's presentation to treating

12   physicians and with the claimant's failure to participate in treatment); *Lewis v. Apfel*, 236 F.3d

13   502, 512 (9th Cir. 2001) (contradictory medical records supported ALJ's rejection of lay

14   testimony as to symptoms).

15          As asserted by the Commissioner, the Ninth Circuit's decision in *Bruce* can be

16   distinguished.   In that case, the Court rejected as improper the ALJ's reasoning that the lay

17   testimony was "not supported by the objective medical evidence."   557 F.3d at 1116.   The

18   ALJ in *Bruce* did not point to any specific evidence, contradictory or otherwise, in support of

19   this conclusion.   Instead, the ALJ appeared to discount in general the value of lay testimony in

20   comparison to objective medical evidence.   S*molen*, cited in *Bruce*, can be similarly

21   distinguished.   In that case, the Court noted that the claimant's disability was based on fatigue

22   and pain, that the medical records were "sparse" and did not "provide adequate documentation

01   of those symptoms[,]" and that, pursuant to SSR 88-13, the ALJ was consequently required to

02   consider the lay testimony as to those symptoms.   80 F.3d at 1288-89.   The ALJ in *Smolen*,

03   therefore, had erred in rejecting the lay testimony because "'medical records, including chart

04   notes made at the time, are far more reliable and entitled to more weight than recent

05   recollections made by family members and others, made with a view toward helping their

06   sibling in pending litigation.'" *Id*. at 1289.   As in *Bruce*, the ALJ essentially rejected the value

07   of lay testimony as compared to objective medical evidence.

08          The ALJ in this case did not point generally to a lack of support from objective medical

09   evidence, or otherwise undervalue lay testimony as a general matter.   Instead, he gave weight

10   to the statements to the extent consistent with the evidence, but found contradictory evidence in

11   the record, including "fairly benign" objective findings, evidence showing plaintiff was able to

12   hear relatively well in settings without loud ambient noise, and evidence contradicting the

13   severity of plaintiff's learning disorder, as well as plaintiff's activities, in general and

14   specifically in taking classes and in her prior work.   (AR 49.)   These reasons were both valid

15   and germane.   Accordingly, the ALJ's assessment of the lay testimony withstands scrutiny.

16                                         Step Four

17          At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

18   assess her work-related abilities on a function-by-function basis, including a narrative

19   discussion.   *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.   RFC is the most a claimant can

20   do considering her limitations or restrictions.   *See* SSR 96-8p. The ALJ must consider the

21   limiting effects of all of plaintiff's impairments, including those that are not severe, in

22   determining RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

01      Although plaintiff bears the burden at step four, the ALJ retains a duty to make factual

02  findings to support his conclusion, including a determination of whether a claimant can perform

03  the actual demands and job duties of her past relevant work *or* the functional demands and job

04  duties of the occupation as generally performed in the national economy.  *Pinto v. Massanari*,

05  249 F.3d 840, 844-45 (9th Cir. 2001) (citing SSR 82-61).  "This requires specific findings as to

06  the claimant's [RFC], the physical and mental demands of the past relevant work, and the

07  relation of the residual functional capacity to the past work."  *Id.* (citing SSR 82-62).

08      Plaintiff raises many arguments in relation to step four.  She contends that the ALJ

09  understated her limitations by disregarding her testimony, lay testimony, and medical source

10  opinions assessing various limitations and finding her capable of only sedentary work.  (Dkt.

11  15 at 19-20.)  She argues that the ALJ made inadequate findings of fact as to the demands of

12  her past relevant work, particularly the mental demands.  *See* SSR 82-62 ("Detailed

13  information about strength, endurance, manipulative ability, mental demands and other job

14  requirements must be obtained as appropriate. . . .   [F]or a claim involving a mental/emotional

15  impairment, care must be taken to obtain a precise description of the particular job duties which

16  are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks,

17  independent judgments, working with other people, etc., in order to determine if the claimant's

18  mental impairment is compatible with the performance of such work.")

19      Plaintiff points to the physical demands of her companion job, noting the vocational

20  expert's (VE) classification of this job as light and her testimony that she had to lift children in

21  and out of wheelchairs and carseats, which presumably requires the ability to lift more than

22  twenty pounds.  (AR 118-20.)  Plaintiff avers that the ALJ erred in failing to specify whether

01   he found her capable of performing her past work as generally or actually performed.   She

02   asserts that it is not clear whether she performed this job long enough for it to be considered

03   SGA, given that she performed it only ten hours a week for three months. (AR 262.)

04        Plaintiff asserts that the frequent reaching, handling, and fingering in the companion

05   job, and the frequent reaching and handling and occasional fingering in the retail sales job (AR

06   122) would be precluded by her shoulder, elbow, and hand pain, and her hand tremor (AR 117).

07   She asserts that the ambient noise in the retail job would be precluded by the ALJ's recognition

08   that she could not perform a job requiring hearing in an environment with loud ambient noise.

09   She also avers that the evidence supports a limitation to simple tasks, corresponding with

10   unskilled work (AR 129), rather than the semi-skilled jobs identified at step four (AR 122-24).

11   Lastly, plaintiff asserts that the General Educational Development (GED) requirements of the

12   jobs identified at step four exceed her abilities, even based on the ALJ's findings, noting that

13   she exhibited problems in the relevant areas on cognitive testing.  (*See* Dkt. 15 at 22; AR

14   122-24.)  *See also* Dictionary of Occupational Titles (DOT) (4th Rev. Ed. 1991), App. C.

15        With the exception of hand tremors and fibromyalgia, plaintiff does not demonstrate

16   reversible error in the ALJ's consideration of her testimony, lay testimony, or medical source

17   opinions as to her physical or mental impairments and resulting limitations.   Many of these

18   arguments are addressed above in relation to other aspects of the ALJ's decision.   Also, as

19   asserted by the Commissioner, the ALJ addressed the conflict in the record between medical

20   opinions as to whether plaintiff could perform sedentary or light work, and adequately

21   supported his conclusion that she could perform work at the light level.   (AR 49 (finding that a

22   restriction to light work was consistent with the objective findings, "which have been generally

01    benign[,]" and plaintiff's activities (including caring for her personal hygiene and grooming,

02    preparation of simple meals, performance of household chores, babysitting, shopping, going to

03    movies, driving, and church attendance) and her prior work).)

04         Plaintiff does not establish that the hypothetical proffered to the ALJ failed to properly

05    account for the RFC assessed.  *Bayless v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005)

06    ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ

07    found credible and supported by substantial evidence in the record. The ALJ's reliance on

08    testimony the VE gave in response to the hypothetical therefore was proper."); *Batson v.*

09    *Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to

10    incorporate evidence from the opinions of . . . treating physicians[] which were permissibly

11    discounted.")   Indeed, many of plaintiff's step four arguments, such as that relating to ambient

12    noise and GED requirements, are cursory and insufficient to establish reversible error.

13         Nor does plaintiff establish error in the consideration of the demands of her past relevant

14    work.   A plain reading of the testimony reveals the consideration of the jobs at issue according

15    to their description in the DOT.  (AR 122-24.)   The DOT is generally considered the best

16    source for determining how past relevant work is generally performed.  *Pinto*, 249 F.3d at

17    845-46.  *See also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (DOT raises

18    rebuttable presumption as to job classification).   Also, the ALJ noted plaintiff performed her

19    work as a companion "part-time over a one to two year period[,]" and concluded she performed

20    the work "long enough to acquire the skills necessary for the job[]" and that the work was both

21    "gainful activity and past relevant work."  (AR 51, n.1.)  Plaintiff does not sufficiently

22    challenge this finding.

01        However, reassessment of the evidence relating to plaintiff's hand tremor and

02   fibromyalgia may impact the ALJ's step four conclusion.   Accordingly, on remand, the ALJ

03   should reconsider this step as necessary.

04                                           Step Five

05        Plaintiff avers the ALJ's failure to meet his burden at step five because the RFC and

06   hypothetical to the VE did not accurately reflect her limitations.   She again asserts that the

07   evidence supports a limitation to sedentary work and with greater restrictions in reaching,

08   handling, and/or fingering.   She also maintains that her pain and fatigue prevented her from

09   working on a regular and continuing basis, as is required for a finding of disability, *see* SSR

10   96-8p, and points to the VE's testimony that an individual who misses more than three days a

11   month due to absences or tardiness could not perform any work (AR 127-28).   Plaintiff avers

12   that eliminating two or even just one of the jobs identified at step five prevented the ALJ from

13   meeting his burden, and that the Court cannot draw a factual conclusion that any remaining

14   number of jobs would be significant.   *Allen v. Barnhart*, 357 F.3d 1140, 1143-44 (10th Cir.

15   2004).

16        As reflected in the step four argument above, a hypothetical posed to a VE must include

17   all of the claimant's functional limitations supported by the record.   *Thomas*, 278 F.3d at 956

18   (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)).   A VE's testimony based on an

19   incomplete hypothetical lacks evidentiary value to support a finding that a claimant can

20   perform jobs in the national economy.   *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)

21   (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

22        Again, plaintiff does not establish that the ALJ presented a deficient hypothetical or

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -37

01  otherwise improperly relied on the VE's testimony.  (*See* AR 52.)   Moreover, even if plaintiff

02  had established her inability to perform one or more of the jobs identified at this step, she

03  ignores Ninth Circuit precedent supporting a district court's finding of harmless error based on

04  the existence of a significant number of remaining jobs.  *See, e.g., Meanel v. Apfel*, 172 F.3d

05  1111, 1114-15 (9th Cir. 1999) (indicating that the court need not address a claimant's

06  arguments regarding one of two jobs identified by the ALJ given that the number of positions

07  for one of those jobs – between 1,000 and 1,500 in the local area – constituted a significant

08  number); *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989)

09  (although declining to exclude certain jobs identified, finding that, even if those jobs were

10  excluded, the remaining jobs – 1,266 jobs in the Los Angeles/Orange County area – constituted

11  a significant number).  *See also, e.g., Meissl v. Barnhart*, 403 F. Supp. 2d 981, 982 & n. 1

12  (C.D. Cal. 2005) (ALJ's step five decision would still be supported by substantial evidence

13  even without consideration of one of two jobs identified by the ALJ given that the numbers for

14  the other job – approximately 1,700 locally and 38,000 nationally – was significant) (citing

15  *Barker*, 882 F.2d at 1479).

16      However, as with step four, the errors identified at step two could have implicated the

17  ALJ's step five finding.   As such, on remand, the ALJ shoulder reconsider step five as needed.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -38

01                          **<u>CONCLUSION</u>**

02          For the reasons set forth above, this matter should be REMANDED for further

03  administrative proceedings.    A proposed order accompanies this Report and Recommendation.

04          DATED this <u>27th</u> day of July, 2010.

05

06                                        _____
                                          Mary Alice Theiler
07                                        United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -39